Filed 3/11/14  Casey v. Owen CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| WILLIAM J. CASEY, as Trustee, etc., et al., | C069340 |
| Plaintiffs, Cross-defendants and Respondents, | (Super. Ct. No. 169950) |
| v. | |
| BRENT OWEN et al., | |
| Defendants, Cross-complainants and Appellants; | |
| HPD BOLES CREEK, L.P., | |
| Cross-defendant and Respondent. | |

In 1979 Brent Owen, Kenneth Whitmire, and John Dunlap agreed to form a general partnership, Rural Housing I, to construct and operate a 50 unit low-income apartment complex.  The United States Farmers Home Administration (Home

1

Administration) regulated and subsidized the venture. Prior to completion of construction, Whitmire transferred his interest in Rural Housing I to Tri Counties Bank. Home Administration did not authorize the bank as a partner, and the bank transferred its interest to its board of directors, a transfer approved by Home Administration. Eventually, Everett B. Beich; Vernon E. Fish; Donald J. Casey, M.D.; and J. Herod Hall, M.D., transferred their interests to new entities, none of whom were approved by the Home Administration. The new entities consisted of Brent Owen; John P. Dunlap; Geraldine F. Pearson, Trustee of Marie H. Fish Trust Dated 10/29/03, and as Trustee of the Vernon E. Fish Marital Trust; Everett B. Beich, Trustee of the Trust of Everett B. Beich, Dated 9/5/91; William J. and Stephen S. Casey, Trustees of the Casey Family Trust of 1990; Anna Lou Hall, Trustee of the Hall Family Trust; Robert H. and Patricia A. Steveson, Co-Trustees of the Robert H. Steveson and Patricia A. Steveson Revocable Trust; and Anna Lou Hall, Partner of the Hall Family Partnership.

In 2009 Rural Housing I decided to sell the apartment complex to cross-defendant HPD Boles Creek, L.P., a California limited partnership (cross-defendant). Following the sale, William Casey, Stephen Casey, Hall, Robert Steveson, Patricia Steveson, Pearson, and Beich (collectively, plaintiffs) filed a complaint for dissolution of the partnership and for declaratory relief. Owen and Dunlap (defendants) filed a cross-complaint seeking to rescind the sale and also seeking declaratory relief. Plaintiffs brought a motion for summary judgment, which the trial court granted. Defendants appeal, arguing plaintiffs were not partners of the partnership because they were not approved by the Home Administration or its successor, the Office of Rural Development. Defendants also challenge the court's denial of their motions to file an amended cross-complaint and to continue trial. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1979 Owen, Dunlap, and Whitmire entered into a partnership agreement to form a general partnership known as Rural Housing I. The purpose of the partnership

2

was "To voluntarily associate themselves together as general partners for the purpose of conducting a business for the building and management of a two phase development apartment complex under the Farmers Home Administration." Under the agreement, "Should the partnership be dissolved by the death of a Partner, the remaining Partners shall have 30 days from the date of death of the deceased Partner to purchase the interest of the deceased Partner in the Partnership . . . ." The Rural Development Administration, which administered the Farm Home Administration Program, was superseded by the Office of Rural Development (Office).

In the 1980's Rural Housing I built the multi-unit apartment complex. Prior to completion of construction, Whitmire transferred his interest in Rural Housing I to Tri Counties Bank. The Home Administration rejected the transfer.

Subsequently, in August 1983 the partnership agreement was amended to admit as partners Vernon E. Fish; Donald J. Casey, M.D.; Robert H. Steveson; Everett B. Beich; J. Herod Hall, M.D.; and The Hall Family Partnership. The Home Administration approved the new partners. The 1983 amendment also provided, in part: "Partnership decisions shall be determined by the vote of partners holding fifty-one percent or more of the partnership . . . . [¶] . . . It is agreed that the partnership agreement may be amended upon the vote of partners holding fifty-one percent or more of the partnership interests in the partnership . . . ."

In January 1985 the partners then remaining in the partnership assumed the obligations of withdrawing partner Whitmire and decreased the partnership interest of Owen and Dunlap under the 1979 partnership agreement. Subsequently, partners Beich, Fish, Casey, and J. Herod Hall passed their respective partnership interests on to various estate representatives and successors. At the time of the events in question, the partners and their interests consisted of: (1) Brent Owen—2.5 percent; (2) John P. Dunlap—2.5 percent; (3) Geraldine F. Pearson, Trustee of Fish Trusts—23.75 percent; (4) Everett B. Beich, Trustee of Beich Trust—11.875 percent; (5) William J. Casey and

Stephen S. Casey, Trustee of Casey Family Trust—23.75 percent; (6) Anna Lou Hall, Trustee of Hall Family Trust—11.875 percent; (7) Robert H. and Patricia A. Steveson, Co-Trustees of Steveson Revocable Trust—11.875 percent; and (8) Anna Lou Hall, Partner of the Hall Family Partnership—11.875 percent.

Defendants did not exercise the option under the partnership agreement to purchase a deceased partner's share. In April 2008 Owen advised the partners in a letter that he had been involved in Rural Housing I as managing partner since its inception in 1981, he was resigning as managing partner, and a meeting should be scheduled to determine a new managing partner.

Owen acted as managing partner of the partnership from 1981 to 2008. During that time, Owen treated William Casey, Stephen Casey, Anna Lou Hall, Robert and Patricia Steveson, Pearson, and Beich as partners. Owen gave notice to them as partners, filed tax returns for the partnership showing them as partners, and issued Internal Revenue Service (IRS) forms K-1 to them for their respective partnership interests.

The following year, partners representing 95 percent of the partnership interest voted to adopt and enter into a third amendment to the partnership agreement. The third amendment confirmed the partnership interests as of January 1985 set forth above, appointed William Casey managing general partner, appointed William Casey and Robert Steveson as managing joint agents for extraordinary affairs of the partnership, and ratified and approved a purchase and sale agreement for the sale of the partnership real property to Highland Property Development, LLC. Defendants were provided with notice of all partnership matters to be voted upon, including those set forth in the third amendment.

In August 2010 escrow for the sale of the apartment complex to cross-defendant closed. A grant deed vesting cross-defendant with full ownership of the complex was recorded.

Plaintiffs filed a complaint for dissolution of the Rural Housing I partnership and for declaratory relief. Defendants filed a cross-complaint alleging a breach of the partnership agreement, breach of fiduciary duty, conversion, rescission, accounting, and declaratory relief.

Cross-defendant filed a motion for summary judgment, which defendants opposed. The trial court granted summary judgment in favor of cross-defendant.

In granting cross-defendant's motion, the court considered defendant's contention that cross-defendant failed to establish they are partners because they failed to apply to the applicable governmental agency as required by the partnership agreements and the Home Administration loan agreements. Although the court found the partnership agreements imposed an obligation on the partnership to seek governmental approval prior to adding partners, the court found it undisputed that the obligation was repeatedly waived by the partners, including defendants. In addition, the parties engaged in conduct that estopped them from using the provisions of the partnership agreements to now begin eliminating partners.

The court concluded: "The evidence before the Court is that all parties engaged in conduct, year after year, which [led] reasonably only to one conclusion that Plaintiffs are partners. Reasonable minds cannot reach a contrary conclusion. Therefore, the issues of waiver and estoppel may be determined as a matter of law. Based on the undisputed facts, the above-referenced provisions of the agreements were waived. . . . Defendants are estopped from asserting the provisions for the purpose of now eliminating partners."

The court found a triable issue of fact as to whether the partnership, under William Casey and Owen's management, repeatedly failed to comply with Home Administration regulations and breached loan agreements entered into with the government agencies. However, the court determined this triable issue was immaterial to adjudication as to whether plaintiffs were partners of the partnership. The court stated: "Even if found to be true, the fact that the partnership repeatedly failed to comply with the terms of the loan

5

agreement with the government agency does not lead to a triable issue of fact as to whether Plaintiffs/Cross-Defendants' partnership interests were somehow voided or invalidated as a result of the noncompliance or breach of loan agreements with a third party. Such a breach of agreement with a third party is immaterial to the factual inquiry of whether Plaintiffs are partners of Rural Housing 1. Even if such facts are material to the inquiry, the principles of waiver and estoppel apply."

Notice of entry of judgment was filed on September 7, 2011. On August 5, 2011, defendants filed a motion to file a first amended cross-complaint and a motion to continue the trial date. On September 14, 2011, the court filed an order granting the motion in part but denying it as to cross-defendant. Defendants filed a timely notice of appeal.

## DISCUSSION

### I.

A motion for summary judgment must be granted if the submitted papers show there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.) The moving party, whether plaintiff or defendant, initially bears the burden of making a "prima facie showing of the nonexistence of any genuine issue of material fact." (*Id*. at p. 845.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id*. at p. 851.) "Thus, if a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would require a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment as a matter of law, but would have to present his evidence to a trier of fact." (*Ibid*., italics omitted.) Once the moving party has met its burden, the burden shifts to the opposing party to show the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subds. (a), (p)(1).)

6

We review de novo the record and the determination of the trial court. First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts negating the opponent's claims and justifying a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable issue of fact. (*Barclay v. Jesse M. Lange Distributor, Inc.* (2005) 129 Cal.App.4th 281, 290.)

## II.

On appeal, defendants argue that in ruling on the motion for summary judgment the trial court erred in assuming plaintiffs were entitled to act as partners. Defendants echo the argument presented in the trial court that the partnership's contracts with the federal government provide the only procedures by which partners can be admitted, and the requirements of those regulations were not satisfied. Since plaintiffs were not properly admitted partners, the sale of the apartment complex ratified by plaintiffs must be rescinded.

In granting summary judgment, the trial court acknowledged that defendants presented evidence that the Home Administration required the partnership to obtain governmental agency approval for any change in partnership organization or ownership. The court specifically enumerated the documents defendants provided in support of this claim, finding they raised a triable issue of fact as to whether the partnership under both William Casey's and Owen's management failed to comply with the Home Administration requirements.

However, the court concluded this triable issue of fact is immaterial to the adjudication of the cause of action for dissolution of partnership, since a breach of an agreement between the partnership and the Home Administration does not lead to a triable issue of fact as to whether plaintiffs' partnership interests were voided or

7

invalidated as a result of the noncompliance or breach of loan agreements with a third party. Defendants fail to respond to the court's reasoning and offer no authority or argument that noncompliance with the Home Administration automatically strips plaintiffs of their partnership interests.

In the alternative, the trial court found that even if such facts were material, the principles of waiver and estoppel applied. The court found it undisputed that all parties engaged in conduct year after year which lead inexorably to the conclusion that plaintiffs were partners. Defendants, the court noted, provided no evidence that plaintiffs did not conduct themselves as partners. Therefore, the court determined the issues of waiver and estoppel in plaintiffs' favor as a matter of law.

We agree with the trial court's conclusion. Although the partnership did not comply with Home Administration requirements in adding plaintiffs, the partnership, including defendants, treated plaintiffs as partners from 1981 through 2008. Given the undisputed evidence, defendants are estopped from claiming plaintiffs lacked authority as partners to sell the apartment complex.

The elements of equitable estoppel are (1) the party to be estopped must be apprised of the facts, (2) the party must intend its conduct shall be acted upon or must so act that the party asserting the estoppel had a right to believe it was so intended, (3) the other party must be ignorant of the true state of facts, and (4) the other party must rely on the conduct to his or her injury. (*In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 352.) These elements are present here.

During his tenure as Rural Housing I's managing partner from 1981 through 2008, Owen repeatedly treated plaintiffs as fellow partners. Owen gave notice of his resignation as managing partner to all the partners, including plaintiffs. Owen's letter was addressed "Dear Partners," announced his resignation, and stated he agreed "with the concept that now is a good time to [*sic*] for one of the majority owners to play a more active role in managing" the apartment complex. Majority owners could only refer to

8

plaintiffs, since Owen's and Dunlap's partnership shares amounted to 2.5 percent each, while each of the other partners held 11.875 percent or greater interests.

In addition, during these years, the partnership's tax returns listed plaintiffs as partners. The partnership issued plaintiffs IRS forms K-1 for their respective partnership interests.

Plaintiffs relied on Owen's representations that they were valid partners of Rural Housing I. Plaintiffs, as partners, voted to enter into a third amendment of the partnership agreement, appointing William Casey managing general partner and approving the sale agreement for sale of the apartment complex to Highland Property Development, LLC. During this period, Owen never challenged or questioned plaintiffs' status as partners; to the contrary, he continued to treat them as partners.

In response, defendants argue William Casey's declaration is inadmissible hearsay. William Casey's declaration sets forth plaintiffs' partnership percentage interests, states a majority of the partners adopted the third amendment to the partnership agreement, and states plaintiffs received IRS forms K-1. The trial court overruled defendants' objection, finding the declaration admissible only to show William Casey's state of mind and why he undertook certain acts, not for the truth of the matters stated.

We review the trial court's evidentiary rulings in connection with the summary judgment motion for an abuse of discretion. (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.) Here, we find no such abuse of discretion.

### III.

Finally, defendants argue the trial court abused its discretion in not allowing defendants to file a first amended cross-complaint prior to the hearing on the summary judgment motion. We find no error.

Plaintiffs filed their original complaint seeking dissolution and declaratory relief on August 6, 2010. Defendants filed their cross-complaint on September 22, 2010. Defendants claim that at the time of the filing of the cross-complaint, they were not aware

9

of the full factual background of the sale since William Casey took possession of the partnership records in 2008.

On June 22, 2011, defendants filed a notice of motion to file an amended cross-complaint. The trial court denied the motion on July 25, 2011. However, the court also agreed that an ex parte application for an order shortening time to hear another motion to amend the cross-complaint could be heard on August 15, 2011.

On August 5, 2011, defendants filed an application for an order shortening time in which to hear a new motion to file a first amended cross-complaint. Defendants also sought an order that the motion for summary judgment filed by plaintiffs, set for August 15, 2011, be continued and not heard until after the hearing on the amended cross-complaint.

The trial court heard plaintiffs' summary judgment motion on August 15, 2011. The court denied defendants' motion to shorten time to hear the motion to file a first amended cross-complaint. The court found defendants "have not demonstrated good cause to shorten time and shortening time prejudices the other parties." The court also denied defendants' motion to continue the hearing on the motion for summary judgment from August 15, 2011, to August 22, 2011, so the motion would not be heard until after the court ruled on the motion to file an amended cross-complaint, finding defendants had not demonstrated good cause to continue the hearing on the motion for summary judgment.

We review the trial court's ruling on a motion to amend a pleading for an abuse of discretion. The party challenging the ruling bears the burden of establishing an abuse of discretion. (*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1097.)

Here, defendants filed their original cross-complaint on September 22, 2010; however, defendants waited nine months, until June 22, 2011, to file a motion to file an amended cross-complaint. Given that the summary judgment motion was scheduled to

10

be heard on August 15, 2011, the trial court acted well within its discretion in denying defendants' motions to shorten time and to continue the summary judgment hearing.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover costs on appeal.

                                           RAYE             , P. J.

We concur:

      NICHOLSON        , J.

      HULL             , J.